IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DONALD JOE GUTTERIDGE, JR., as )
limited guardian of D.C., a minor child, )
                                                 )
                Plaintiff, )
                                                 )
v. )      Case No. CIV-13-816-C
                                                 )
THE STATE OF OKLAHOMA; )
THE OKLAHOMA DEPARTMENT OF )
HUMAN SERVICES, State of Oklahoma, )
et al.,[1] )
                                                 )
                Defendants. )

MEMORANDUM OPINION AND ORDER

D.C. is a minor who was removed from her parents' home on August 19, 2010, after the parents were involved in a domestic altercation. On August 20, 2010, D.C. was placed in the temporary emergency custody of Defendant Oklahoma Department of Human Services ("OKDHS")[2]. OKDHS then placed D.C. into the foster care home of Carolyn Funk ("Funk"). At the time of her placement, D.C. was 2 years old and considered a special needs child, as she has cerebral palsy and was unable to care for herself. On September 14, 2010, D.C.'s parents stipulated that she was a deprived child and D.C. was adjudicated a ward of

---

[1] As Defendant OKDHS notes, the use of ex rel. in relation to a Defendant party is improper. Consistent with Tenth Circuit precedent, the Court will treat both the State of Oklahoma and the Oklahoma Department of Human Services as Defendants. See Osage Nation v. Okla. ex rel. Okla. Tax Comm'n, 260 F. App'x 13, n.3 (10th Cir. 2007).

[2] Plaintiff does not allege any action by Defendant State of Oklahoma other than through the employees of OKDHS. Accordingly, as used herein, OKDHS will include both the State of Oklahoma and Oklahoma Department of Human Services.

the court. On October 8, 2010, OKDHS received a child welfare referral advising them that D.C. had an unexplained shoulder fracture. OKDHS removed D.C. from the Funk home pending an investigation. On October 20, 2010, the allegation of abuse resulting in the shoulder fracture was ruled as unsubstantiated and D.C. was returned to the Funk home. On September 27, 2011, OKDHS received a child welfare referral relating to an unexplained bruising on D.C.'s forehead and began an investigation. The bruising or knot was first reported by D.C.'s father and stepmother on September 15, 2011. On September 28, 2011, D.C. was removed from the Funk home at Funk's request and placed in the LeBarre home. On October 3, 2011, after being placed in the LeBarre home, D.C. was seen by a nurse at the Cotton County Health Department. The nurse did not recommend any additional medical treatment. On October 13, 2011, OKDHS received a child welfare referral related to D.C. Earlier that morning, at approximately 7:00 a.m., LeBarre noticed D.C. displaying strange behavior, however she did not seek medical assistance. Rather, LeBarre waited until 8:00 a.m. to call the OKDHS office to speak with an individual there. Ultimately D.C. was transported by an OKDHS worker and LeBarre to a local doctor's office. The doctor believed a stroke had occurred and recommended taking D.C. to Comanche County Memorial. Thereafter, D.C. was medi-flighted to OU Children's Hospital. It was determined that D.C. had suffered a significant brain injury which reduced her level of functioning significantly. Following an investigation, OKDHS determined that D.C. had sustained a non-accidental injury that was consistent with abuse while in the LeBarre home.

In an effort to obtain recompense for D.C.'s injuries, Plaintiff, as a limited guardian of D.C., filed the present tort and civil rights action. Plaintiff sued OKDHS relying on Oklahoma tort law and sued the individual Defendants, Bethanie Kuzma, Shannon McElroy, Scott Batiste, Misty Jennings-Nelson, Betty Johnson, Renee Fields, and Regina Benson pursuant to 42 U.S.C. § 1983 alleging a violation of constitutional rights.[3] Plaintiff also brought suit against the foster parents, Funk and LeBarre.[4]

The individual Defendants now seek summary judgment arguing that the undisputed facts demonstrate Plaintiff is unable to prove any violation of law. These Defendants argue that they are entitled to qualified immunity or, in the alternative, that Plaintiff cannot prove a constitutional violation occurred.

## **STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact

---

[3] Plaintiff also named as a Defendant Cindy Buchan. However, Ms. Buchan could not be located for service and Plaintiff served her by publication. Ms. Buchan has never entered an appearance in the matter and Plaintiff has taken no further action against her.

[4] Plaintiff has settled the claims against Funk and LeBarre.

3

requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## ANALYSIS

1. Individual Defendants

Because the individual Defendants have asserted qualified immunity as a defense, the above standards are applied in a slightly modified manner.

> [T]he objective is *not* to determine whether a plaintiff survives summary judgment because plaintiff's evidence raises material issues that warrant resolution by a jury. Instead, the principal purpose is to determine whether plaintiff's factual allegations are sufficiently grounded in the record such that

4

> they may permissibly comprise the universe of facts that will serve as the foundation for answering the *legal* question before the court.

Thomson v. Salt Lake Cty., 584 F.3d 1304, 1326 (10th Cir. 2009). Of course the legal question to be answered is whether there was a violation of a clearly established constitutional right. Id.

> When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion. The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity.

Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009). Here, Defendants do not suggest that the right asserted by Plaintiff was not clearly established. Rather, the focus is solely on whether there was a violation.

Plaintiff relies upon two theories in support of the claim of a constitutional violation– the existence of a special relationship, and/or that the actions of the individual Defendants created a danger. Indeed, no party argues that the individual Defendants were personally involved in the abuse of D.C. Rather, it is clear that any abuse of D.C. occurred in one or both foster homes and at the hand of private individuals in those homes. As a general rule, state actors cannot be held liable for the actions of private citizens. Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995). However, "there are two recognized two [sic] exceptions to this rule: (1) the special relationship doctrine; and (2) the 'danger creation' theory. A special relationship exists when the state assumes control over an individual sufficient to trigger an

5

affirmative duty to provide protection to that individual," while the danger creation theory is available where the state actor "created the danger that harmed that individual." Id.

The Tenth Circuit has held that foster children are in the type of custodial relationship that creates a special relationship. Yvonne L. ex rel. Lewis v. N. M. Dep't of Human Servs., 959 F.2d 883, 893 (10th Cir. 1992); Schwartz v. Booker, 702 F.3d 573, 580 (10th Cir. 2012). "The special relationship triggers a continuing duty which is subsequently violated if a state official 'knew of the asserted danger to [a foster child] or failed to exercise professional judgment with respect thereto, . . . and if an affirmative link to the injuries [the child] suffered can be shown.'" Id. at 580 (quoting Yvonne L. ex rel. Lewis, 959 F.2d at 890). The actions necessary to impose liability are limited, as "*state officials* will only be found to have violated this right if they 'knew of the asserted danger to [foster children] or failed to exercise professional judgment with respect thereto, . . . and if an affirmative link to the injuries [the children] suffered can be shown.'" Schwartz, 702 F.3d at 581-82 (quoting Yvonne L. ex rel. Lewis, 959 F.2d at 890).

> Whether the state official failed to exercise professional judgment requires more than mere negligence; the official must have abdicated her professional duty sufficient to shock the conscience. J.W.[v. Utah], 647 F.3d [1006] at 1011 [(10th Cir. 2011)]. Conduct is shocking to the conscience when the "'degree of outrageousness and [ ] magnitude of potential or actual harm [ ] is truly conscience shocking.'" Armijo [ex rel. Chavez v. Wagon Mound Pub. Sch.], 159 F.3d [1253] at 1262 [(10th Cir. 1998)] quoting Seamons v. Snow, 84 F.3d 1226, 1236 (10th Cir. 1996)).

Schwartz, 702 F.3d at 585-86.

The created danger theory is applicable where the state actor created the danger that led to the harm. Uhlrig, 64 F.3d at 572.

> For the state to be liable under § 1983 for creating a special danger (i.e. where a third party other than a state actor causes the complained of injury), a plaintiff must allege a constitutionally cognizable danger. That is, the danger creation theory must ultimately rest on the specifics of a substantive due process claim–i.e. a claim predicated on reckless or intentionally injury-causing state action which "shocks the conscience."

Id. To satisfy the "shock the conscience" standard, "the plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." Id. at 574. Thus, for Plaintiff to be successful under either theory, there must be actions by Defendants which shock the conscience.

Plaintiff argues his claim is not for negligent placement of D.C. but for abdication of professional judgment in returning D.C. to the home, failing to obtain medical care for D.C. after her head injury in the Funk home, and in transferring her to another abusive home.[5] In support of his position, Plaintiff offers a number of reports of abuse or threats of harm arising in the Funk foster home. However, the majority of actions relied upon by Plaintiff occurred after D.C. had left the Funk home. After reviewing Plaintiff's allegations of wrongdoing and accepting theses allegations as true, the individual Defendants should have been aware of the following:

---

[5] Although Plaintiff disavows placement of D.C. as a theory, the arguments in his pleadings raise that very issue. Accordingly, the Court will consider placement as well as the other issues raised by Plaintiff.

- On December 3, 2009, a seven-year-old reported that she had been spanked by Ms. Funk. The child welfare specialist examined the [child's] backside, confirmed bruises; Ms. Funk denied spanking and the claim was resolved as unsubstantiated.

- On August 12, 2010, Ms. Funk deliberately failed to follow a doctor's orders to keep a brace on a child with cerebral palsy. After investigation it was ruled to be unsubstantiated and an isolated event.

- On August 12, 2010, a two-year-old child ingested 20 of Ms. Funk's Valium pills. The child was taken to the ER and spent the night in the hospital. This was determined to be an isolated incident of neglect and the child was removed from the home.[6]

Plaintiff offers the following instances of alleged wrongdoing occurring in the Funk home which involved D.C.

- On October 8, 2010, D.C. was taken to the ER with a fever and the physician discovered a fractured shoulder. Ms. Funk offered no explanation for the fractured shoulder, and she indicated that D.C. had not acted as if she had been in any pain.

- On January 17, 2011, a caller from D.C.'s school reported that Ms. Funk was excessively gruff, refused to console D.C., used a form of severe swaddling to restrain D.C., and had unreasonable expectations of a disabled child.

- On February 17, 2011, it was reported that Ms. Funk allowed D.C. to fall back in the bathtub, striking her head against the back of the tub, so she would learn not to do it.

- On April 13, 2011, D.C.'s father reported that Ms. Funk had failed to inform him of his daughter's surgery.

- On September 15, 2011, D.C.'s father reported that D.C. had a significant bruise on her face and a large "goose egg" on her head.

---

[6] Plaintiff also relies on an incident where children in Ms. Funk's care were left unsupervised in a vehicle. However, the record citation offered by Plaintiff is to a deposition. The Court located a DHS report regarding the incident and it appears to have occurred after D.C. left the Funk home. See Dkt. No. 201, Ex. 4, Bates Stamp DHS0721.

8

- On September 27, 2011, after being contacted regarding the bruising and head injury, Ms. Funk demanded that D.C. be removed from her home.

Even when viewed in the light most favorable to Plaintiff, these instances do not shock the conscience. Rather, they are at most reckless or negligent.

> It is well settled that negligence is not sufficient to shock the conscience. In addition, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. Even knowingly permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking.

Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006) (internal quotation marks and citations omitted).

D.C. was placed in the LeBarre home on September 28, 2011. Plaintiff complains that OKDHS violated various policies in placing in D.C. in the LeBarre home. None of those arguments come with any evidence of more than negligent conduct. As for knowledge by the individual Defendants about potential danger in the LeBarre home, the only evidence offered by Plaintiff relates to reports that Ms. LeBarre had been illegally spanking foster children. The Court finds that placing D.C. in the LeBarre home even armed with that knowledge does not shock the conscience.

Because Plaintiff has failed to offer facts demonstrating the actions of any of the individual Defendants shock the conscience, each of the individual Defendants is entitled to qualified immunity. Accordingly, the individual Defendants' Motion for Summary Judgment will be granted.

2. OKDHS

Plaintiff also filed suit against the State of Oklahoma, specifically the Oklahoma Department of Human Services, under the Oklahoma Governmental Tort Claims Act, 51 Okla. Stat. § 151, et seq. ("GTCA"), seeking $15 million in damages for failure to treat and care for D.C., as well as an Oklahoma constitutional law-based claim for battery or excessive force pursuant to the Oklahoma Supreme Court's decision in <u>Bosh v. Cherokee County Building Authority</u>, 2013 OK 9, 305 P.3d 994. OKDHS now seeks summary judgment on both claims, asserting that the undisputed material facts demonstrate Plaintiff cannot recover. Analysis of OKDHS's Motion will proceed under the standard Fed. R. Civ. P. 56 process.

OKDHS directs the Court to a number of exemptions from liability under the GTCA which it argues preclude Plaintiff's claims. While many of those arguments would stretch the exemption or the facts of this case beyond recognition, one in particular is dispositive of Plaintiff's claims against OKDHS under the GTCA. 51 Okla. Stat. § 155, ¶ 29 states:

> The state or a political subdivision shall not be liable if a loss or claim results from:
> . . . .
> 29.    Any claim based upon an act or omission of an employee in the placement of children.

Plaintiff argues that this statute is inapplicable because he is not bringing a claim against OKDHS regarding the "placement" of D.C.; rather, Plaintiff argues his claims arise from OKDHS's failure to evaluate and acknowledge that the foster homes had a pattern of abusive behavior against children and that the return of D.C. to the Funk home after she had suffered a fractured shoulder was a violation of OKDHS's duty to ensure D.C.'s safety. Plaintiff also argues that his claims arise from the failure to provide D.C. medical care, rather than

10

transferring her to the LeBarre home, and the failure to provide the necessary medical monitoring of D.C. in the LeBarre home.

As OKDHS notes in its Reply, Plaintiff's current semantic distinctions cannot overcome the clear assertions set forth in his Third Amended Complaint. Paragraph 45 alleged that OKDHS was obligated to not return or approve the return of and/or continue the placement of D.C. to or in the Funk home. "(D) Not place D.C. in the LeBarre Home in October 2011, based on the information known to the DHS employees" at that time. Paragraph 46 of the Third Amended Complaint states OKDHS failed to: "(A) Exercise ordinary care and reasonable prudence in the care of D.C. when it failed to prevent the return and/or approval of the return and/or continue the placement of D.C. to (or in) the Funk Home." "(D) Exercise ordinary care and reasonable prudence in the care of D.C. when it failed to prevent the placement of D.C. in the LeBarre Home in October 2011." See Dkt. No. 161.

Thus, Plaintiff, even when engaging in the linguistic exercises undertaken in his Response and Surreply, bases the GTCA-based claims against OKDHS on alleged wrongdoing in the decisions to place D.C. in either the Funk home or the LeBarre home and/or to allow D.C. to remain in the Funk home after some injury had occurred. All of these actions fall well within the limitation of 51 Okla. Stat. § 155, ¶ 29, as they are based upon an act or omission of an employee in the placement of children. Accordingly, the Court finds that Plaintiff's GTCA-based claims against OKDHS are barred by the Governmental Tort Claims Act and Defendant is entitled to summary judgment on them.

Plaintiff also brought a Bosh claim against OKDHS. However, Plaintiff offered no response to Defendant's arguments in its summary judgment motion outlining the reasons why that claim could not proceed. Indeed, even after OKDHS identified the failure to respond in its Reply, Plaintiff did not offer any argument or counter in his Surreply. Accordingly, the Court finds that Plaintiff has abandoned any claim pursuant to Bosh v. Cherokee Cnty. Bldg. Auth. and Defendant is entitled to summary judgment on that issue.

## **CONCLUSION**

For the reasons set forth more fully herein, the Motion for Summary Judgment of Defendants, Bethanie Kuzma, Shannon McElroy, Scott Battice, Misty Jennings Nelson, Betty Johnson, Renee Fields, and Regina Benson (Dkt. No. 183) and the Motion for Summary Judgement of Defendants State of Oklahoma and Oklahoma Department of Human Services (Dkt. No. 186) are GRANTED a separate judgment will issue. Plaintiff's claims against Cindy Buchan are DISMISSED with prejudice for lack of prosecution. All other pending Motions are STRICKEN as moot.

IT IS SO ORDERED this 3rd day of October, 2016.

ROBIN J. CAUTHRON
United States District Judge